IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDI L. TOBIN, | No. C 10-02937 SI |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; REMANDING TO AGENCY** |
| v. | |
| MICHAEL ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

The parties have filed cross-motions for summary judgment in this Social Security appeal. Based upon the Court's review of the parties' papers and the administrative record, the Court hereby GRANTS plaintiff's motion, DENIES defendant's motion, and REMANDS to the Social Security Administration for further proceedings consistent with this order.

**BACKGROUND**

On February 23, 2007, plaintiff Candi Tobin filed a claim for Disability Insurance Benefits under Title II of the Social Security Act. Administrative Record ("AR") 84. Plaintiff sought disability benefits and claimed she was unable to work between October 13, 1999 and June 30, 2005 as a result of an alleged "bizarre nonspecific autoimmune and neurological phenomenon," accompanied by "stress, joint pain, mental confusion, and muscle contractions." *Id.* at 92, 111. Complaining of skin lesions, fatigue, muscle pain, anxiety, light and heat sensitivity, and confusion, among other symptoms, she visited many physicians during this period. *Id.* at 333, 612, 271-72, 446. Her diagnoses included a skin

condition called Sweet's Syndrome, autoimmune problems presenting lupus-like symptoms, "Fight or Flight" Syndrome, and an anxiety disorder, among others. *Id.* at 232-33, 446, 537-38. Her primary care physician, Dr. Thomas Suard, who has treated her for more than ten years, believed that she was unable to work between September 1998 and June 2005. *Id.* at 536. In early July 2005,[1] her rheumatologist, Dr. Joan Campagna, observed an "auto-immune problem [with] a combination of neurologic problems, as well as lupus and Sjogren's symptoms" and fatigue. *Id.* at 446. However, in 1999 her treating physician, Dr. Jeffrey Kishiyama, found no objective basis for some of her complaints, which he found "unbelievable or possibly delusional." *Id.* at 202-03. Plaintiff also consistently tested negative for classic autoimmune diseases like lupus. *Id.* at 227, 334.

In 1999 and 2000, plaintiff took extended medical absences from her last full-time job as an accountant for Sutter Home winery. *Id.* at 607, 610, 612. Dr. Suard advised her employer to accommodate her heat sensitivity with climate and light controls in her workspace. *Id.* at 607. By September 2000, she did not feel well enough to return permanently, and her employment with Sutter Home ceased. *Id.* at 31. She has not worked outside her home since then. For the remainder of the period at issue, she mostly stayed at home making jewelry for sale, taking care of her pets, making lunch for her husband, and resting. *Id.* at 44-46. She testified that she needed to nap for several hours during the day. *Id.* at 45. She said she was unable to "take walks." *Id.* at 35. Her husband claims she was unable to do certain household chores, including lifting laundry. *Id.* at 44. She claimed to suffer muscle spasms after driving for ten minutes, and worried about driving to and from destinations approximately thirty to forty miles away. *Id.* at 34.

Obtaining her business license in 2000, plaintiff hired a representative to sell the jewelry she made in her home. *Id.* at 29. She estimated that in 2005 or 2006 she produced between $12,000 and $15,000 in gross jewelry sales. *Id.* However, both she and her husband characterized it as "like a hobby." *Id.* at 42.

---

[1] Though Dr. Campagna made her medical observation one week beyond plaintiff's last insured date, it must be considered because 20 C.F.R. § 404.1527(c) requires the ALJ to "review all of the evidence relevant to [the] claim." It would not be reasonable to view Dr. Campagna's opinion as unrepresentative of plaintiff's condition one week earlier. On remand, the ALJ shall consider Dr. Campagna's medical opinions to the extent they are relevant to the insured period.

2

The Social Security Administration ("SSA") initially denied her disability claim on July 3, 2007. *Id.* at 10. SSA denied her claim again upon reconsideration on September 28, 2007. *Id.* Plaintiff then requested a hearing on October 19, 2007, and appeared before an Administrative Law Judge ("ALJ") on December 11, 2008. *Id.* She testified along with her husband and daughter, as well as a vocational expert ("VE"). *Id.* Following the hearing, the ALJ again denied her claim on May 18, 2009. *Id.*

The ALJ reached his decision after applying the five-step sequential evaluation procedure set forth in 20 C.F.R. § 404.1520(a)(4). This procedure dictates that in the first two steps, a claimant must establish that she is (1) not performing substantial gainful work and (2) not performing substantial gainful work due to one or more severe impairments. *Id.* An impairment must have lasted or be expected to last twelve months in order to be considered severe. 20 C.F.R. § 404.1509. In the third step, the claimant must establish that her impairment meets or medically equals a listed impairment described in the administrative regulations. 20 C.F.R. § 404.1520(a)(4). If the claimant's impairment does not meet or equal one of the listed impairments, the evaluation proceeds to the fourth step, in which the claimant must establish that her impairment prevents her from performing relevant work she did in the past. *Id.* In the fifth step, the Commissioner must demonstrate that the claimant is able to do other work, and that there are a significant number of jobs in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Commissioner may meet this burden by relying upon "the testimony of a vocational expert." *Id.* The burden of proof is on the claimant as to the first four steps. *Id.* at 1098. The burden shifts to the Commissioner for the fifth step. *Id.*

Here, the ALJ found at step one that the claimant did not engage in substantial gainful activity during the period at issue. AR 12. Since she only worked "two to four hours per day making jewelry and managing two employees, with rest periods between tasks," the ALJ found "that the claimant's work activity does not constitute substantial gainful activity." *Id.* At step two, the ALJ found that plaintiff had no severe impairment or combination of impairments besides Sweet's Syndrome. *Id.* at 12-13. In making this limited determination, he was persuaded by lab tests, which in his words, "reflect[ed] no significant abnormalities." *Id.* at 13. He also relied on the views of one physician who, in 1999, found her complaints to be "unbelievable or possibly delusional." *Id.* He considered plaintiff's own "statements of her symptoms" to be insufficient to show that she had more than one severe impairment.

*Id.* In characterizing those symptoms, the ALJ focused heavily on plaintiff's lesions and heat and light sensitivity, but did not mention her fatigue and nap requirements in his step two analysis. *Id.* at 12-13.

At step three, he found that she had no impairments that met or medically equaled one of the administrative regulations' listed impairments. *Id.* He did not explain this finding further. At steps four and five, he determined that she could not perform her past work as an accountant, but that she retained a residual functional capacity (RFC) such that there were still jobs in the national and regional economies she could perform. *Id.* at 12-16. He found that although Dr. Suard said she could not work at all, Dr. Suard's views were "unreliable because the claimant provided Dr. Suard an outline to follow," and because she "requested that Dr. Suard make a statement indicating that the claimant is unable to work, which Dr. Suard did." *Id*. at 13. The ALJ, therefore considered only the limits on her RFC that were attributable to her "only medical-determinable impairment . . . Sweet Syndrome, which produces skin lesions that 'bother' the claimant but are not disabling . . . ." *Id.* at 14. He did not find her husband and daughter's testimony to be persuasive regarding her fatigue and movement limitations. *Id.* at 15.

Relying on testimony from a VE, the ALJ found that plaintiff could perform unskilled, light, sedentary work. *Id*. at 15. The ALJ asked the VE to respond to two scenarios describing, hypothetically, the occupational limitations of a person with plaintiff's medical issues. *Id.* at 55. The ALJ asked the VE to respond by describing what kinds of jobs, if any, a person facing each hypothetical scenario could perform. *Id.* The first hypothetical asked the VE to consider a person who "[w]ould need to avoid extreme heat and concentrated exposure to unprotected heights, moving machinery and that sort of hazard." *Id.* Such a person, "[s]hould occasionally kneel, crouch or crawl, should used no ladders, ropes of [sic] scaffolds . . . and should perform no skilled work because of the difficulties with confusion at times and the possibility of side effects of medication." *Id*. The VE responded with a handful of examples of jobs that someone with those limitations could perform. *Id.* at 55-56. Based on the VE's response to this hypothetical, the ALJ found that plaintiff's RFC allowed her to perform some work such that she was not disabled under SSA rules. *Id.* at 16.

The ALJ then asked the VE to respond to a second hypothetical, which plaintiff described as "pretty much nail[ing]" her limitations. *Id.* at 57. The ALJ described a scenario where "because of various environmental exposures and difficulty in focusing . . . this person will be unable to work

4

roughly two to three hours in every working day because they'll have to take themselves away from the work at hand and rest . . . ." *Id.* at 56. The VE responded that such a person could not maintain any competitive employment. *Id.* In his decision, the ALJ did not specifically explain why he relied on the VE's response to the first scenario and not the second.

After the ALJ denied her claim, plaintiff sought review from the SSA Appeals Council. With the assistance of counsel for the first time in the proceeding, plaintiff filed with the Appeals Council on September 22, 2009. *Id.* at 1. The Appeals Council denied her request for review on May 14, 2010. *Id.*

On July 2, 2010, plaintiff filed a complaint with this Court seeking judicial review of the Commissioner's final decision pursuant to 42. U.S.C. § 405(g). Both parties have moved for summary judgment.

**STANDARD OF REVIEW**

A district court's review of a disability determination is limited, and a final administrative decision may be altered "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Substantial evidence is that relevant evidence in the entire record "which a reasonable person might accept as adequate to support a conclusion." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Substantial evidence consists of "more than a mere scintilla but less than a preponderance." *Young v. Sullivan*, 911 F.2d 181, 183 (9th Cir. 1990). The Court must consider the entire record, including evidence that both supports and detracts from the ALJ's decision. *See Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). However, the ALJ's decision must be upheld if the evidence is susceptible to more than one rational interpretation. *Allen v. Secretary of Health and Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984).

**DISCUSSION**

Plaintiff moves for summary judgment on the question of whether the ALJ erred in his step two and step three analyses by dismissing, without explanation or apparent consideration, several of plaintiff's alleged impairments. Specifically, plaintiff argues that by improperly rejecting her testimony,

her physicians' opinions, and testimony from members of her family, the ALJ erred by failing to consider, alone or in combination, evidence of her autoimmune problems, fatigue symptoms, and movement limitations. Plaintiff argues that since these conditions and symptoms are particularly relevant to her ability to work during the period in question, the ALJ committed legal error by failing to consider them. Plaintiff also argues that the ALJ improperly evaluated her RFC, and thus erred at steps four and five by dismissing or failing to consider some of her physicians' opinions, her own testimony, and the testimony of her family members regarding her ability to work.

For the reasons described below, the Court finds that the ALJ erred at step two by improperly rejecting evidence of plaintiff's alleged impairments and symptoms. The Court therefore remands to the ALJ to evaluate and explain his consideration of plaintiff's alleged autoimmune problems, fatigue symptoms, and movement limitations. On remand the ALJ must also reconsider his RFC analysis at steps four and step five because these steps require adequate consideration of these alleged impairments' impact on plaintiff's ability to work.

The ALJ need not, however, reconsider his step three finding because plaintiff did not establish a theory before the ALJ to show that her impairments were equivalent to ones found in the SSA's Listing of Impairments found in 20 C.F.R. Part 404, Subpt. P, App. 1 ("Appendix 1").

## I. The ALJ Committed Legal Error by Failing to Consider the Full Record

Plaintiff correctly argues that the ALJ committed legal error by improperly discounting evidence regarding the severity of her impairments and the extent of her RFC. These material errors permeate the ALJ's analysis in steps two, four, and five and should be reconsidered upon remand.

### A. ALJ's evaluation of medical evidence

Plaintiff claims that the ALJ erred at step two by improperly discounting, or failing to consider, the opinions of Drs. Suard and Campagna, both of whom observed her autoimmune problems and physical limitations, including severe fatigue, between 1999 and 2005. AR 446-48, 612, 614. Though the ALJ found that plaintiff's Sweet's Syndrome qualified as a "severe impairment" at step two, plaintiff argues that by ignoring or improperly rejecting evidence of her fatigue and non-specific autoimmune

6

1 problems in combination with Sweet's Syndrome, the ALJ disregarded particularly relevant information
2 about her alleged inability to work.

3 An ALJ cannot ignore or reject the judgment of a treating physician, even when that judgment
4 is controverted by another physician, without "'specific and legitimate' reasons supported by substantial
5 evidence in the record." *Lester v. Chater*, 81 F.3d 821, 831 n. 8 (9th Cir. 1995); *see also* 20 C.F.R.
6 §404.1527(d)(2). An ALJ may "meet his burden by setting out a detailed and thorough summary of the
7 facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."
8 *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).
9 However, a bare recitation of the types of medical test results that have come up negative is not
10 substantial evidence sufficient to reject the judgment of a treating physician. *See Embry v. Bowen*, 849
11 F.2d 418, 421 (9th Cir. 1988). Rather, "[t]he Commissioner is required to give weight not only to the
12 treating physician's clinical findings and interpretation of test results, but also to his subjective
13 findings." *Lester*, 81 F.3d at 832-33. When considering those findings, "[t]he ALJ is responsible for
14 determining credibility." *Magallanes*, 881 F.2d at 750. Importantly, however, "[t]he purpose for which
15 medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester*, 81 F.3d at
16 832.

17 Plaintiff points out that, contrary to the ALJ's holding, the medical record contains support for
18 severe impairments beyond just Sweet's Syndrome. Between October 13, 1999 and June 30, 2005, the
19 period between the alleged onset of her disability and the date she was last insured, doctors observed
20 other problems in addition to Sweet's Syndrome. Her physicians at UCSF observed a "lupus like"
21 condition as early as 1998. AR 334. In July 25, 2000, which is within the covered period, Dr. Suard
22 opined that she suffered from a "lupus like syndrome." AR 607. On July 7, 2005, rheumatologist Dr.
23 Joan Campagna found that she "clearly has an auto-immune problem" with "lupus and Sjogren's
24 symptoms." AR 446. Though the ALJ found "there is no objective basis for the claimant's symptoms,"
25 AR 13, and though the ALJ need not credit opinions which are "brief, conclusory, and inadequately
26 supported by clinical findings," *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002), Dr. Campagna
27 employed an analysis of both "signs and symptoms" in diagnosing her "auto-immune phenomenon."
28 AR 448. In a physical examination, Dr. Campagna "stroke[d] her skin with a cotton-tipped swab" to

1    reveal "findings of dermatographia, which is an auto-immune indicator." AR 447. In reaching her
2    diagnosis, she accounted for plaintiff's history of "neurologic complaints, as well as autoimmune lupus
3    and Sjogren's complaints . . . history of Hashimoto's thyroiditis and autonomic insufficiency symptoms
4    at times." AR 448.

5           Physicians also observed that plaintiff suffered physical limitations aside from heat sensitivity,
6    which the ALJ emphasizes as her "primary complaint." AR 15. In particular, the ALJ discounted,
7    without specific explanation, the history of fatigue and physical weakness her physicians observed
8    between 1999 and 2005. Dr. Mendius, her neurologist, and Dr. Suard documented her fatigue
9    complaints in 2000, as did her acupuncturist Todd Turetsky several times in 2002, and Dr. Campagna
10   did in 2005. AR 333, 612, 271-72, 446. In a letter referencing the period from "Sept. 1998 to June
11   2005," Dr. Suard opined that she "cannot lift 5 pounds, walk for more than 5 minutes or drive for more
12   than 30 minutes without muscles contracting painfully." AR 536. Since the plaintiff's own testimony,
13   to be discussed further *infra,* along with that of her family members, corroborates these observations,
14   and since "the ALJ must consider subjective symptoms such as fatigue and pain" in considering the
15   severity of plaintiff's impairments and her RFC, the ALJ's treatment of her doctors' findings is
16   incomplete without a discussion of her autoimmune problems and fatigue symptoms. *See Smolen v.*
17   *Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996).

18          The ALJ's efforts to discredit the opinions of these treating physicians regarding plaintiff's
19   fatigue and autoimmune problems aside from Sweet's Syndrome are not sufficiently "specific and
20   legitimate." *Lester v. Chater*, 81 F.3d 821, 831 n. 8 (9th Cir. 1995). Presumably to discredit the
21   opinions of treating physicians Drs. Suard and Campagna, the ALJ emphasized that during the covered
22   period many objective tests, including x-ray, MRI, electrophysiological testing, and blood tests, did not
23   reveal significant abnormalities. AR 13. Based on a non-specific litany of the types of tests that came
24   up negative, the ALJ claimed that "[t]reating and consulting physicians have consistently advised that
25   there is no objective basis for the claimant's symptoms" and that plaintiff's complaints are not supported
26   by "medical evidence consisting of signs, symptoms, and laboratory findings." *Id.* His analysis of the
27   medical evidence in the record, however, is inadequate because as the Ninth Circuit held in *Embry*, "[t]o
28   say that medical opinions are not supported by sufficient objective findings or are contrary to the

1 preponderant conclusions mandated by the objective findings does not achieve the level of specificity
2 . . . required, even when the objective factors are listed seriatim." *Embry v. Bowen*, 849 F.2d 418, 421
3 (9th Cir. 1988). To the extent that physicians like Drs. Suard and Campagna diagnosed autoimmune
4 problems, such as "lupus-like syndrome," and physical limitations including fatigue, the ALJ cannot
5 rest his analysis on a litany of negative test results. Under *Embry*, "[t]he ALJ must do more than offer
6 his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors',
7 are correct." *Id*. Moreover, he must weigh not only "the treating physician[s'] clinical findings and
8 interpretation of test results, but also … his subjective findings." *Lester* 81 F.3d 821, 832-33 (9th Cir.
9 1995); *see also Embry*, 849 F.2d at 421 (finding that "[t]he subjective judgments of treating physicians
10 are important, and properly play a part in their medical evaluations" such that "they cannot be
11 disregarded unless clear and convincing reasons for doing so exist and are set forth in proper detail").

12 The ALJ correctly points out that one of plaintiff's physicians, Dr. Kishiyama, found her
13 complaints "unbelievable or possibly delusional" in 1999. AR 13, 202-03. But even assuming that
14 these findings controvert those of Drs. Suard and Campagna, they do not, by themselves, constitute the
15 kind of "substantial evidence" required by *Lester* and *Embry* to reject contrary findings. To properly
16 evaluate "whether there is substantial evidence to support the ALJ's finding, a reviewing court must
17 consider both evidence that supports, and evidence that detracts from, the examiner's conclusion."
18 *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984). On remand, the ALJ should evaluate those
19 medical opinions that detract from plaintiff's case in concert with those that support it, instead of
20 deciding the case "by isolating a specific quantum" of evidence from one side. *Id*.

21 Though the ALJ adequately discounts the opinion of another treating physician, Dr. Cokgor,
22 regarding plaintiff's ability to work between 1999 and 2005, the ALJ's analysis as to that physician is
23 not relevant to undermining the opinions of Drs. Suard and Campagna. AR 14. That is because unlike
24 Drs. Suard and Campagna, Dr. Cokgor began treating plaintiff in 2006, and thus did not evaluate her
25 at a time directly relevant to the years in question. AR 636. Thus, the irrelevance of Dr. Cokgor's
26 opinion regarding plaintiff's ability to work during this period cannot be a "specific and legitimate" for
27 rejecting the relevant opinions of Drs. Suard and Campagna.
28

9

The ALJ's only other reason for rejecting plaintiff's physicians' medical opinions is his claim that Dr. Suard's views are "unreliable because the claimant provided [him] an outline to follow in describing the claimants symptoms, treatment, and limitations." AR 13. Though the ALJ must weigh credibility where conflicting medical testimony exists, it is improper for an ALJ to reject a physician's medical claims because they appear to have been delivered at the request of the claimant. Since the Ninth Circuit in *Lester* held that "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them," the ALJ erred in the instant case by impugning the legitimacy of Dr. Suard's statements to the SSA because plaintiff requested them, even if the manner of the request had some influence on Dr. Suard. *Lester*, 81 F.3d at 832; *see also Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (finding that "the use of leading, hypothetical questions to elicit expert opinions is entirely appropriate"). Since the ALJ did not point to "evidence of actual improprieties," Dr. Suard's alleged reliance on plaintiff's outline is not the sort of "legitimate" basis on which the ALJ may reject his opinions. *Lester*, 81 F.3d at 832.

Without a "legitimate" basis for discrediting Dr. Suard's opinion,[2] the ALJ erred in uncritically crediting the opinions of Dr. David, the Commissioner's own examining physician, over plaintiff's treating physicians. AR 15. The ALJ found that "[s]tate agency medical consultants determined that the claimant . . . is physically able to perform light work," and that "these opinions are consistent with the record as a whole." *Id.* Though the ALJ cites to Dr. David's finding that plaintiff could frequently lift and/or carry ten pounds, her primary care physician, Dr. Suard, said she could not lift five pounds without pain. AR 512, 536. Further, Dr. David's finding that plaintiff can stand and/or walk "with normal breaks" for a total of about six hours in a work day directly conflict's with Dr. Suard's finding that she cannot "walk for more than 5 minutes" without "muscles contracting painfully." AR 512, 536. Under Ninth Circuit case law, "more weight should [generally] be given to the opinion of a treating

---

[2] Though the Commission argues that the ALJ had the discretion to disregard Dr. Suard's statements based on his alleged motivation, the case Commission cites in support, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), is distinguishable from the facts here. In *Saelee*, the Ninth Circuit found that an ALJ could reject a physician's statement where "it was obtained solely for the purposes of the administrative hearing, varied from [that physician's] own treatment notes, and was worded ambiguously." *Id.* Here, the ALJ does not mention finding Dr. Suard's statement "ambiguous," nor does it appear to be inconsistent with his treatment notes.

10

1  source than to the opinion of doctors who do not treat the claimant"; thus the ALJ improperly weighted
2  Dr. David's findings in determining plaintiff's ability to perform work tasks. *Lester*, 81 F.3d at 829.
3  Because of this presumption, the ALJ cannot credit examining physicians' opinions over Dr. Suard's,
4  on remand, without more "specific, legitimate reasons." The finding that an examining physician's
5  "opinions are consistent with the record as a whole" is insufficient. AR 15.

6  If, on remand, the ALJ feels he must "know the basis of [a physician's] opinions in order to
7  evaluate them, he ha[s] a duty to conduct an appropriate inquiry, for example, by subpoenaing the
8  physicians or submitting further questions to him." *Smolen*, 80 F.3d at 1288.

### B.     ALJ's evaluation of claimant's and other lay testimony

Plaintiff also correctly argues that the ALJ erred in his evaluation of her family's testimony, as well as plaintiff's own testimony about her fatigue and movement limitations. An ALJ cannot "reject a claimant's complaints [without] 'specific, cogent reasons for the disbelief.'" *Lester*, 81 F.3d at 834 (internal citations omitted). Further, "[g]eneral findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. The ALJ must "consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ may not discount a claimant's testimony regarding the severity of her symptoms without listing "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

Plaintiff observes that the ALJ improperly failed to articulate specific, cogent reasons for not considering plaintiff's extensive testimony of fatigue symptoms and movement limitations. Homebound in 2005, plaintiff worked on jewelry she sold through independent sales contractors. AR 27-28. She testified that at that time she would spend "two to three hours in the morning [making jewelry] and then…sleep in the afternoon and then…probably spend a couple hours in the evening." *Id.* at 28. She said "I can work at it maybe a couple hours at a time and then I have to go rest." AR 27. She claimed "[s]leep seems to be the thing that kind of eradicates the symptoms." *Id* at 28-29. When asked if, in 2005, she was "able to take walks, do things like that?" she replied "[n]o. Its [sic] been a while." *Id.*

11

at 35. She claimed that her ability to drive a car by herself in 2005 was so limited that she suffered muscle spasms "after like 10 minutes" and did not like driving as far as "from Napa to Vallejo," a distance of no more than thirty or forty miles, because she "would be worried about driving back." AR 34.

By contrast with the Ninth Circuit cases upholding ALJs' rejections of claimants' testimony, the ALJ in the instant case failed to offer sufficiently specific, cogent reasons for finding plaintiff's testimony not credible. Here, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." But unlike in *Thomas*, where the ALJ challenged a claimant's credibility with finding that she specifically could do laundry, household chores, and shopping, here the ALJ offered only the bare and general claim that "statements from claimant and her husband reveal that claimant is able to engage in a wide range of daily activities."[3] AR 15; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). As in *Lester*, where the court reversed an ALJ for "not provid[ing] any specific reasons for her disbelief other than a lack of objective evidence," the ALJ in the instant case rested on his finding that objective tests "failed to establish any objective abnormalities in her body system," along with a non-specific, unsupported reference to "numerous inconsistencies in the claimant's reports to her physician." AR 15; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). The ALJ's analysis is not sufficient to discount plaintiff's testimony.

The ALJ also erred by failing to consider plaintiffs' relatives' testimony about her ability to work during the relevant time period. Within the Ninth Circuit, "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2009). The ALJ cannot "discount the testimony of lay witnesses" without "giv[ing] reasons that are germane to each witness." *Id.*

---

[3] The ALJ's view that "statements from the claimant and her husband reveal that the claimant is able to engage in a wide range of daily activities" is not well supported. Claimant described her activities as limited to eating breakfast, taking care of her pets, reading email, making jewelry for a couple of hours, making her husband lunch, and napping. AR 45. Her husband said that her jewelry work "wasn't a real job, she just needed something because she couldn't leave the house . . . other than that she wasn't – she was pretty much homebound." AR 42.

Her husband attested to her fatigue and movement limitations, testifying that in 2005 she had to take a nap after more than a few hours of regular functioning. AR 39, 41. Both he and plaintiff agreed that she could not lift the laundry in 2005, and that he cleaned the house and yard. AR 44. Addressing his wife at the administrative hearing, he said "back in 2005 … you couldn't work at home because you, you couldn't function for more then [sic] about an hour." AR 45. Plaintiff's daughter, who testified to speaking with her mother every day in 2005 and visiting her once or twice a week, said "she's got to take naps on a regular basis. When she doesn't take naps or when she is under stress then she can't talk, she starts to – you think she's talking but she's mumbling, she's saying weird things." AR 48.

The ALJ very briefly summarizes the lay witness testimony, but does not consider it in his analysis beyond concluding that it "did not provide any additional basis for finding the statements credible." AR 15. This does not qualify as actual "consider[tion of] lay witness testimony concerning a claimant's ability to work," nor does it offer "reasons that are germane to each witness," or otherwise, for discounting it. *Stout*, 454 F.3d at 1053.

On remand, the ALJ must fully consider plaintiff's testimony and that of her relatives concerning her ability to work during the period in question. Unless he finds and provides valid reasons for rejecting it, he must credit it and incorporate it into his findings.

### C.     ALJ's consideration of vocational expert testimony

Plaintiff argues that the ALJ posed an incomplete hypothetical to the Commissioner's VE, and therefore erred in relying on the VE's response to that hypothetical. An ALJ cannot rely on a VE's response to a hypothetical unless the hypothetical is "based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001).

> Here, the ALJ posed, and relied on the VE's response to the following hypothetical:
> Assume for this first hypothetical that this person could perform in the light [work] range. Would need to avoid extreme heat and concentrated exposure to unprotected heights, moving machinery and that sort of hazard. Should only occasionally kneel, crouch or crawl, should use no ladders, ropes of [sic] scaffolds and should avoid, and

13

should perform no skilled work because of the difficulties with confusion at times and the possibility of side effects of medication.

AR 55. The VE replied that, based on this hypothetical, the plaintiff could not perform her past work, but she had an RFC that would allow her to perform light, unskilled work for which there were a number of jobs in the national and local economies. *Id.* at 55-56. Based on this reply, the ALJ found that plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy," and so found that she was not disabled. *Id.* at 17.

Since the ALJ committed legal error in failing to consider evidence in the record regarding plaintiff's autoimmune problems, fatigue, and movement limitations, this Court finds that the ALJ erred in formulating and relying on the above hypothetical because it failed to consider "each of the claimant's limitations." *Osenbrock*, 240 F.3d at 1163.

Curiously, the ALJ also posed a second hypothetical that assumed a positive finding of debilitating fatigue and movement limitations, and asked the VE to consider:

> The second hypothetical [where] we'll have additional restriction and those are basically that because of various environmental exposures and difficulty in focusing and concentrating as a result this person will be unable to work roughly two to three hours in every working day because they'll have to take themselves away from the work at hand and rest either reclining or sitting in some way dealing with the fatigue that would have developed. If a person has this sort of limitation on a day in, day out basis could they maintain competitive employment?

AR 56. The VE replied that a person with such restrictions could not maintain competitive employment of any kind, presumably implying that such a person would be disabled. *Id.* It is unclear why the ALJ chose to rely on the first hypothetical and not the second. On remand, the ALJ must base his decision on a hypothetical that considers "each of the claimant's limitations." *Osenbrock*, 240 F.3d at 1163.

## II.     ALJ's step three finding

Plaintiff argues that the ALJ erred in his step three findings by failing to consider fully whether her alleged impairments were equivalent to those listed in Appendix 1 of the administration's regulations. Though the ALJ dismissed any notion of step three equivalency with a terse finding that "the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments," he did not err in failing to explain that finding fully. AR 13. That is

14

sufficient because under Ninth Circuit precedent, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Bursh v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). There is no indication in the record that plaintiff tried to make an equivalency showing before the ALJ, nor did she reference any Appendix 1 listings at her hearing. The closest she came to making "an effort to establish equivalence" was the following statement in her attorney's petition for review by the Commission's Appeals Council following the ALJ decision:

> The Social Security Administration specifically recognizes that a claimant may suffer from an immune system disorder(s) which does not fall within the criteria of Listing 14.00, and acknowledges that such disorders may be medically determinable. Mrs. Tobin's symptom complex includes the skin photosensitivity, anxiety, and neuropathy. Under Listing 14.00 J, these indicia of an autoimmune process should be recognized by the ALJ, and at least acknowledged to meet SSA's *de minimus* [sic] "severe impairment" requirement.

AR 195. The Ninth Circuit in *Bursh* held that a claimant "bears the burden of proving that ... she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." *Bursh*, 400 F.3d at 683. Though plaintiff's counsel argues the equivalency point in his brief, the statement above is all that either counsel, or plaintiff herself, ventures before any administrative body. While unrepresented before the ALJ, plaintiff made no specific equivalency argument. Since counsel only claims before the Appeals Council that the "autoimmune process should be recognized by the ALJ," but does not attempt to prove explicitly that plaintiff's condition is equivalent to Listing 14.00, as he is required to do, this Court cannot hold that the ALJ erred in his step three equivalency finding. AR 195. Even though the ALJ must develop the record regardless of whether the plaintiff is represented by counsel, which she was not until petitioning the Appeals Council, Ninth Circuit authority does not require an ALJ to cobble together an equivalency analysis unless the argument is posed to her. *See Bursh*, 400 F.3d at 682-83.

///

**CONCLUSION**

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment and DENIES defendant's motion for summary judgment. Docket Nos. 12 & 13. The Court REMANDS to the Social Security Administration for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: August 23, 2011

SUSAN ILLSTON
United States District Judge